United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

                                    Hon. George Caram Steeh

v.

                                    Case No. 22-cr-20667

Amber Nicole Dunbar,

        Defendant.
_____/

## The United States' Sentencing Memorandum

Dunbar treated young children close to her---those who she was supposed to love and protect---like sex objects. She performed oral sex on a seven-month-old and announced that she was going to "finger her so fucking hard" in separate videos. (PSR ¶ 11). In another video, she described how she was going to perform oral sex on the infant and then stuck her tongue in the infant's open mouth. *Id.* She sent those sexually explicit images to another individual, not knowing whether that image would be widely distributed over the Internet. She took sexually explicit photographs of a five-year-old known and close her while discussing with her husband the plans for him to sexually assault her. (PSR ¶ 14).

Dunbar has demonstrated that she is a grave danger to the public and to minors. The Court should sentence her to the maximum sentence, a sentence of 50 years' imprisonment.

## I.     Dunbar Committed Unfathomably Horrific Offenses

One factor the Court considers in fashioning a sentence is the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). In October 2022, law enforcement in Tennessee executed search warrant at a residence looking for evidence of child pornography. (PSR ¶ 10). The officers' discovery was even more brutal than in most child pornography cases. They discovered that the subject had been soliciting women to produce sexually explicit images of themselves with children known to them in order to send to the subject. They discovered a chat with a user named "XXDaddysLilSlut***" which indicated that she produced child pornography for him.



(Bates No. 16-17). From an investigation into account information, officers determined a suspect based on IP Address and other identifying information – Amber Dunbar.

Using Dunbar's identification, officers located three videos on the Tennessee subject's electronic device that appeared to be manufactured by Dunbar, which are described below:

- <u>2cba4321-2293-42c4-abbb-cdce05c862f0.mp4</u>: An 11 second video of an adult female performing oral sex on a female infant;

- <u>95191b87-ca31-4eb7-8aa0-ob8f379f0932.mp4</u>: A 12 second video with an adult female hovering over a female infant saying, "Yeah? You want [redacted] to eat your little fucking little slutty pussy huh? Yeah? Open your fucking mouth." The female then kisses the infant opened mouth and inserts her tongue into the infant's mouth; and,

- <u>268a5319-5a1f-494a-bda8-2777763c719b.mp4</u>: An 8 second video of an adult woman hovering over an infant, saying, "Yeah, you like that you fucking little slut? I'm gonna fucking finger you so hard" while kissing the infant and inserting her tongue in the infant's mouth.

(R. 1, Pg.ID 4).

After receiving this information, FBI in Macomb County swiftly executed a search warrant at Dunbar's Warren residence on December 7, 2022. Dunbar initially denied producing any child pornography until confronted with evidence that she had done so. She eventually admitted to producing child pornography with a seven-month old (MV-1) but denied producing with any other minors. Agents later learned this denial was untrue. Dunbar also admitted that she belonged to a group on the Kik application devoted to incest and child pornography:

> Dunbar participated in a Kik group about incest between adults and kids and recalled the group name was Family Fun Time. Drakious007 told Dunbar about the group so that she could get more child pornography images and videos. Dunbar would view the child pornography shared within the group, but did not save any images or videos on her phone.

(Bates No. 136).

On the same day as the search warrant execution, a criminal complaint charged Dunbar with the sexual exploitation of a minor and later, a grand jury returned an indictment for the same offense, as well as for distribution of child pornography.

Later, Dunbar's husband, Ryan Dunbar ("Ryan"), reported to the FBI that Dunbar had engaged in sexual contact with another minor (MV-2), as well as causing sexually explicit images of that child to be made. He provided a detailed and disturbing account of Dunbar's actions:

> 2021.
>
> AMBER touches [MV-2] who is five years old. AMBER "rubs on her", RYAN has not seen this but AMBER tells him she has done it. AMBER says she "rubs her peach", this is a term she uses to refer to a vagina. RYAN brought this up now because he did not know what AMBER had done to [MV-1]
>
> AMBER took pictures of [MV-2] sitting naked with her legs spread on the floor, in the bathtub and of her butt from behind. AMBER sent these pictures to RYAN. He believed it was through text messages.

Page **5** of **11**

```
    AMBER is bisexual and wants a threesome with RYAN and another girl.  RYAN
stated "she wants me to go down on [MV-1]   He advised there are no
photos or videos of him doing sexual acts [      ]     RYAN did not
recall AMBER sending him videos, but there were photos.

    During sex, AMBER wanted RYAN to call her [MV-2]    AMBER "gets off" by
RYAN calling her this.  AMBER told RYAN "we can't find another girl, so can
we use [MV-2] instead? She's not yours."  AMBER wanted an older girlfriend
but that did not happen.  She talked about a threesome with [MV-2] and
others.  Talk of incest started around June or July of 2022, when they were
taking care of [MV-1]   RYAN did not know AMBER was into incest prior to
this.
```

(Bates No. 148-149).

FBI agents later found screenshots of extremely disturbing conversations between Ryan and Dunbar, which are below (Dunbar's texts are on the right side):



Page **6** of **11**



Along with these messages, agents discovered four sexually explicit images involving the lascivious exhibition of MV-2's genitals. (PSR ¶ 14).

Dunbar's offenses favor the strongest sentence possible. Her crimes are amongst the most serious an individual can commit. While the infant will not remember this abuse, they will have to live with the knowledge of the acts of abuse comitted by someone close to them that was supposed to care for and love them. MV-2 did not disclose hands-on abuse in her forensic interview but it seems extraordinarily likely that Dunbar engaged in abuse to her beyond the images recovered in this case.

## II. Dunbar's Characteristic of an Uncontrolled Attraction to Children Favors a Long Sentence

Another factor the Court considers is the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Here, Dunbar has a limited criminal history, with her only criminal conviction resulting from using her mother's debit card to make thosuands of dollars in unauthorized purchases. (PSR ¶ 67). Dunbar has a variety of mental health issues, with a long history of medcation, treatment, and self-reports fourteen diferent hospitalizations for mental health. (PSR ¶¶ 87-95). Yet despite this lenghty history of mental illness, she was not taking any medication at the time of this offense. (PSR ¶ 93). and fourteen different hospitalizations. Dunbar has no high school diploma or GED, and no employment history at all. (PSR ¶¶ 101-105).

But Dunbar's defining characteristic is her inability to control her sexual attraction to children. Regardless of anything else in her history or any other characteristic she has demosntrated, this is the characteristic that should drive the Court's sentence. She has demonstrated a sexual desire for children and an inability to control herself around them.

Her history and characteristic favor a maximum sentence.

### III. Other Setencing Factors Favor a Maximum Sentence

The Court also considers numerous other factors, including the neeed to protect the public from further crimes by the defendant, a sentence that reflects the seriousness of the offense, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A-C). These sentences favor a maximum sentence. Dunbar's actions have demonstrated there is an immense need to protect the public from her. A Court should reserve sentences at the statutory maximumf or the most serious of offenses, which accurately describes what occurred here. Finally, a maximum sentence of 50 years is the most just punishment for Dunbar's extreme offenses.

### CONCLUSION

Dunbar's sentencing guidelines are life and the 50-year sentence recommended by the government is actually lower than if she had been convicted of additional offenses that she has committed, such as the sexual exploitation of MV-2. The mandatory minimum sentence or anything close to it would be woefully inadequate to reflect harm

Dunbar caused. The Court should sentence Dunbar to 50 years' imprisonment.

                                  Respectfully submitted,

                                  DAWN N. ISON
                                  United States Attorney
                                  Eastern District of Michigan

                                  *s/Christopher W. Rawsthorne*
                                  CHRISTOPHER W. RAWSTHORNE
                                  Assistant U.S. Attorney
                                  211 W. Fort Street, Suite 2001
                                  Detroit, MI 48226
                                  christopher.rawsthorne@usdoj.gov
                                  (313) 226-9160

Date: July 8, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system which will send notification of such filing to all ECF participants of record via electronic mail.

*s/Christopher W. Rawsthorne*
CHRISTOPHER W. RAWSTHORNE
Assistant U.S. Attorney